**FILED**

MAR 3 0 2012

CLERK

IN U.S. DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Jessica Moran, individually and as the Mother of Kahlani Caprice Frenchman, an unborn child, | ) ) ) ) ) | Case No. _12-4056_ |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **COMPLAINT** |
| Dr. Terry A. Haag and Dr. Jorge Simental, | ) ) ) ) | |
| Defendants. | ) | |

Plaintiff pleads as follows:

1.     Plaintiff is a resident of South Dakota.

2.     Defendants are residents of a state other than the State of South Dakota.

3.     There exists complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.

4.     On May 6, 2010, at 1925 hours, Plaintiff, a 33 year old Native American female, who was 34 4/7 weeks pregnant, presented at the Rosebud Indian Health Service Hospital emergency room with severe abdominal pain of sudden onset.

5.     Jessica was initially treated by Dr. Simental, ER doctor, at approximately 1928 hours.  Dr. Simental looked in on her, but did not physically examine her.  He prescribed an IV and series of medications, including morphine.  Dr. Simental's diagnosis was (1) intrauterine pregnancy 34 2/7 weeks; (2) Nephrolithiasis (kidney stones); (3) early labor.

1

6.      According to RIH records, at 2000 hours Jessica was seen by Dr. Terry A. Haag, Board Certified by American Board of Obstetric & Gynecology.  Dr. Haag's impression was (1) IUP at 34 4/7 weeks; (2) nephrolithiasis.  Dr. Haag advised Jessica and her family that she had a "classic case of kidney stones" and that she would be given IV fluids and medication and admitted to RIH for 23 hour observation to see whether she passed the stones.

7.      After this visit, Jessica was not seen by a physician until 0800 hours on May 7, 2010.  During the night Jessica's condition did not improve and she continued to experience severe abdominal pain.  In Dr. Haag's words, "Pt without improvement P aggressive hydration and pain management."

8.      At approximately 0800 hours Dr. Haag ordered Jessica transferred to Sanford Hospital in Sioux Falls.  In spite of Jessica's severe abdominal pain which had not responded to IV's or medication, the fact that the cause of Jessica's pain had not been determined and that Jessica's condition had not improved, Dr. Haag represented on the transfer sheet that her condition was stable at the time of transfer.

9.      On May 6, 2010, Dr. Haag took an Obstetric History and History of Present Illness/Labor.  The history indicated that Jessica had undergone Gastric Bypass surgery in 2009.  During the night of May 6-7 Jessica's baby's fetal heart tone was monitored intermittently.  According to a nurse's note at 0800 on May 7, 2010, fetal movement and fetal heart tones 140-150's were observed.  In spite of the fact that the fetal heart tracings from that morning show an increasing baseline and lack of previously noted reactivity, Dr. Haag failed to conduct further testing for fetal reassurance prior to

transport.  Indeed, there is no record that Dr. Haag even looked at the FHT's that morning or that the increasing baseline and lack of prior reactivity was noted or considered at all.

10.     After her transfer was ordered, Jessica sat and waited, with no medical treatment or monitoring of her or her baby, for almost an hour for the tribal ambulance to arrive.  When the ambulance arrived, it had no equipment to monitor FHT's and no FHT's were documented at that time or during the four hour transport.

11.     On arrival at Sanford Hospital, Jessica was in extreme pain and having difficulty breathing.  During an exam she coded and remained in a coma for 5 days.

12.     Ultrasound conducted on arrival revealed fetal demise and free fluid in the abdomen.  A CT scan indicated no kidney stones, but a perforation in Jessica's small bowel and foreign material in her abdomen.

13.     An immediate C-section was performed to remove the fetus followed by the repair of the tear.  Upon entering the abdomen, there was a very large rush of intestinal content grossly out of the abdomen.  When Jessica, who the treating physicians were surprised survived, came out of her coma 5 days later, she learned that Kahlani was deceased and had already been buried.  Jessica never once got to see or hold her baby.

14.     Jessica was released from Sanford on May 18, but has continued to experience significant health and emotional problems and has undergone extensive medical treatment for complications associated with the bowel perforation and operations she underwent at Sanford.

15.     In January of 2011, the Department of Health and Human Services Centers for Medicare and Medicaid, following an investigation at RIHS, issued a report which determined, among other things, that RIHS "(b) Failed to provide a medical

3

screening examination that was, within reasonable clinical confidence, sufficient to determine whether or not an Emergency Medical Condition (EMC) existed for 9 of 21 sample patients," including Jessica Moran; "(c) Failed to ensure the patient's Emergency Medical Condition was stabilized prior to discharge/transfer of four of 21 patients," including Jessica Moran.

16.     Dr. Simental was negligent in the care and treatment of Jessica Moran and her unborn child, Kahlani, in the following and other respects to be developed through discovery:

a.     Jumping to a diagnosis of nephrolithiasis apparently based on data from a prior visit which was incomplete and wrongly interpreted fell below the applicable standard of care.

b.     The failure to take steps, including an ultrasound to determine the condition of the baby and a CT scan, to prove or disprove the diagnosis of kidney stones fell below the standard of care.

c.     The failure to consider and take steps to eliminate complications due to the prior gastric bypass surgery as the cause of Jessica's condition fell below the standard of care.

d.     The failure to consult with the general surgeon on call fell below the applicable standard of care.

e.     The failure to consider early transfer due to the high risk pregnancy and possibility of premature birth fell below the applicable standard of care.

4

17.     Dr. Haag was negligent in the care and treatment of Jessica Moran and her unborn child, Kahlani, in the following and other respects to be developed through discovery:

a.     Jumping to a diagnosis of nephrolithiasis apparently based on data from a prior visit which was incomplete and wrongly interpreted, fell below the standard of care.

b.     The failure to take steps, including an ultrasound or CT scan, to prove or disprove the diagnosis of kidney stones fell below the standard of care.

c.     The failure to consider and take steps to eliminate complications due to the prior gastric bypass surgery as the cause of Jessica's condition fell below the standard of care.

d.     The failure to consult with the general surgeon on call fell below the applicable standard of care.

e.     The failure to consider early transfer due to the high risk pregnancy and possibility of premature birth fell below the applicable standard of care.

f.     The failure to note and investigate the cause of Kahlani's increased baseline and lack of previously noted reactivity as shown by her fetal heart tracings on the morning of 5-7-10 fell below the applicable standard of care.

g.     The decision to transfer Jessica Moran without a confirmed diagnosis and without her condition being stabilized fell below the standard of care.

h.     The decision to transfer Jessica Moran and her unborn child by ground ambulance without a confirmed diagnosis and without her condition being stabilized in an ambulance with no capability of monitoring fetal heart tones and across

an area of the state with no available facilities to treat an emergency fell below the standard of care.

        i.      Once the decision to transfer was made, the decision not to transfer Jessica Moran and her unborn child by helicopter fell below the applicable standard of care.

        j.      The failure to contact Sanford Health to send its NICU unit to Rosebud to provide care and treatment for Jessica and her unborn child fell below the standard of care.

        k.      The failure to arrange for delivery of Kahlani by cesarean rather than transport fell below the applicable standard of care.

18. Kahlani Caprice Frenchman was 35 4/7 weeks, weighed 5 lbs. 10 oz. and was normal in every respect at the time of her wrongful death due to the negligence of Defendants. With appropriate diagnosis and treatment, her death would not have occurred.

19. Jessica Moran has sustained personal injury, pain and suffering, emotional distress and has incurred significant medical and medical related expenses as a direct result of Defendants' negligence and has sustained permanent injury which will require future treatment and expense all as a direct result of Defendants' negligence.

20. That Defendants' conduct constituted both negligent and intentional infliction of emotional distress as defined by South Dakota law.

WHEREFORE, Plaintiff prays as follows:

1.      For judgment against Defendants jointly and severally in an amount to be determined by the jury;

2.      For costs and disbursements herein;

3.      For such other and further relief as the Court shall deem just and meet in

the premises.

Dated this _30_ day of March, 2012.

> COSTELLO, PORTER, HILL,
> HEISTERKAMP, BUSHNELL &
> CARPENTER, LLP
>
> by: _Edward C. Carpenter_
>
> Edward C. Carpenter
> Spencer C. Mosness
> P.O. Box 290
> Rapid City, SD 57709
> (605) 343-2410
> Attorneys for Plaintiff

**TRIAL BY JURY IS DEMANDED**